**Dennis K. ROLLINS**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services.**

**Civ. No. 85–5216.**

United States District Court,
E.D. Pennsylvania.

Feb. 17, 1992.

254

Jess Levinthal, Langhorne, Pa., Eric J. Fischer, Disability Law Center of Fischer & Walkenhorst, Jenkintown, Pa., for Dennis K. Rollins.

Joanna M. Jacobs, James G. Sheehan, David H. Ward, Asst. U.S. Attys., Philadelphia, Pa., for Social Sec. Admin. Secretary of Health and Human Services.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

In this action, plaintiff has moved for a protective order seeking an attorney's fee as a prevailing party pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.[1] For the reasons set forth below, plaintiff's motion will be treated as an application for an attorney's fee, and will be

granted. Plaintiff will have fifteen days from the entry of this Memorandum and Order in which to file a supplement to his application, in conformance with the EAJA.

## I. PROCEDURAL BACKGROUND

This case has a long history, both administratively and before this court. On September 21, 1983, plaintiff applied for Supplemental Security Income benefits ("SSI"), claiming disability as of July 2, 1982. After the Secretary of Health and Human Services rendered a final decision denying benefits, plaintiff brought the present action, seeking review of that decision pursuant to 42 U.S.C. § 405(g). On November 2, 1987, I remanded the case to the Secretary for further consideration of plaintiff's impairment. On remand, after an additional hearing, the Administrative Law Judge ("ALJ") found that plaintiff was disabled as of September 3, 1988. That decision was affirmed by the Social Security Appeals Council. Plaintiff returned to this court, contending that the ALJ had erred in determining the date of the onset of disability. On January 15, 1991, I accepted the Report and Recommendation of United States Magistrate Judge William F. Hall, Jr., and remanded to the Secretary for reconsideration of the date of plaintiff's disability. The matter is still pending before the Secretary.

Plaintiff took no action seeking an award of an attorney's fee under the EAJA until July 10, nearly six months after the entry of the January 15 remand order, when he filed the present motion.

## II. LEGAL ANALYSIS

The EAJA provides for an award of attorney's fees to a "prevailing party" and requires that an application for an award of fees be filed "within thirty days of final judgment in the action." 28 U.S.C.

---

**1.** The EAJA provides in relevant part:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by

or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

§ 2412(d)(1)(A), (B). Whether plaintiff has properly submitted an application for attorney's fees therefore depends on whether the January 15 remand order gave plaintiff the status of prevailing party and served as a final judgment.

Under the Third Circuit's interpretation of the EAJA that prevailed on January 15, 1991, an order remanding a claim to the Secretary for further proceedings did not establish the plaintiff as a prevailing party. In *Brown v. Secretary of Health and Human Services*, 747 F.2d 878 (3d Cir.1984), the court concluded that, because the relief that a Social Security claimant sought was not vindication of the right to be heard, but rather was a reversal of a previous decision denying benefits, the claimant did not become a prevailing party until an affirmative decision was made that the claimant was entitled to benefits. *See id.* at 883. Moreover, because a decision to remand did not terminate the litigation, the court concluded that a remand order did not constitute a final judgment for EAJA purposes. Rather, the court contemplated that the district court would retain jurisdiction over the claim and enter final judgment once there had been a positive resolution on the merits, either in the district court or in post-remand administrative proceedings. *See id.* Thus, under the law that prevailed on January 15, 1991, if plaintiff had moved for an award of attorney's fees at that time, the motion would have been premature.[2]

The situation changed on June 10, 1991, with the Supreme Court's decision in *Melkonyan v. Sullivan*, — U.S. —, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). In that case, the Court was called upon to determine the consequences, for EAJA purposes, of a district court order purporting to remand a case, on the agreement of the parties, to the Secretary for further consideration. The Court determined that, under section 405(g), only two kinds of remand were possible. *See id.* at 2164. Under the fourth sentence of section 405(g), a court can enter "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A sentence four order, the Court observed in passing, is a "final judgment" for the purposes of the EAJA; therefore, when a sentence four order directs that a case be remanded to the Secretary, the period for filing a petition under the EAJA begins after the entry of the order and the running of the period for appeal. *See Melkonyan*, 111 S.Ct. at 2165. The alternative form of remand comes under the sixth sentence of section 405(g), which permits the court to remand to the Secretary for further proceedings without entry of a judgment if new evidence has been discovered.[3] Such a remand does not constitute a final judgment, because the district court makes no determination of the merits of the claim. *See id.* at 2163, 2165.

*Melkonyan* did not involve a sentence four remand; the issue in that case was whether the district court's order was a sentence six remand or another form of order, such as a dismissal under Rule 41(a) of the Federal Rules of Civil Procedure. *See id.* Nevertheless, the Supreme Court's conclusion that only two kinds of remand were possible, and that a remand under sentence four constitutes a final judgment

**2.** Although a motion filed before the entry of final judgment would be premature, it would not be barred. "The EAJA establishes only a deadline after which EAJA petitions may not be filed: earlier filing is possible." *Taylor v. United States*, 749 F.2d 171, 175 n. 8 (3d Cir.1984).

**3.** Sentence six reads in full:
The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.
42 U.S.C. § 405(g).

even if the matter is then remanded for further proceedings, effectively overruled the Court of Appeals' interpretation of section 405(g) in *Brown*. After *Melkonyan*, it is indisputable that the thirty-day period in which a petition for an attorney's fee may be filed begins to run after the district court enters a sentence four order to remand and the time from which to appeal that order expired. Were *Melkonyan* to apply to plaintiff in this action, plaintiff's motion for fees, filed nearly six months after the entry of the January 15 remand order and nearly five months after the expiration of the period in which that order could have been appealed, would be barred as untimely.

■ The question thus is whether *Melkonyan* is to receive retroactive application in the present case. Defendant contends that it should. He characterizes the thirty-day time limit in 28 U.S.C. § 2412(d)(1)(B) as a waiver of sovereign immunity whose interpretation goes to the jurisdiction of this court; he further contends that jurisdictional rulings must be applied retroactively. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379–80, 101 S.Ct. 669, 676–77, 66 L.Ed.2d 571 (1981).

I find defendant's jurisdictional argument unpersuasive. In *Firestone*, the court of appeals had decided that an order denying a motion to disqualify counsel was not appealable prior to the entry of final judgment. Because its ruling represented a departure from precedent, however, the court proceeded to address the merits of the appeal. The Supreme Court held that, once the court of appeals had decided that it lacked jurisdiction to hear the appeal, it had no authority to address the appeal on its merits. The Court noted, however, that the appeal could be heard following the entry of final judgment. *See id.* at 377–78, 101 S.Ct. at 675–76. The Court did not address a situation in which a change in the interpretation of a jurisdictional statute would have the effect of precluding a party from ever having a claim decided on the merits. Thus, *Firestone*, on its own, should not be read to preclude review of plaintiff's motion. *See Snyder v. Smith*,

736 F.2d 409, 415 (7th Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984).

In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court enunciated a three-part test to determine whether a newly-announced rule of law should be applied only on a prospective basis. Two members of this court have analyzed retroactive application of *Melkonyan* using the *Chevron* test, and I follow their lead here. *See Brown v. Sullivan*, Civil No. 89–4138, 1991 WL 225012, 1991 U.S.Dist. LEXIS 15553 (E.D.Pa. Oct. 29, 1991); *Miller v. Sullivan*, Civil No. 90–2408, 1991 WL 165067, U.S.Dist. LEXIS 11919 (E.D.Pa. Aug. 23, 1991). The factors identified in *Chevron* are as follows:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application....

*Chevron*, 404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted). Application of these three factors strongly suggests that *Melkonyan* should not receive retroactive application.

First, it is plain that plaintiff could have justifiably relied on the established precedent of *Brown* to decline to file a petition for attorney's fees at the time of this court's remand order. Although the Third Circuit's interpretation of the EAJA did not bar plaintiff from filing at that time, *see Taylor v. United States*, 749 F.2d 171, 175 n. 8 (3d Cir.1984), neither did it require one. Indeed, because, under *Brown*, plaintiff could not at that time have been considered a prevailing party, *Brown* as a practical matter discouraged the filing of a motion

at a time when plaintiff could not possibly make one of the showings required to prevail on the motion for attorney's fees.

Second, it is clear that retrospective application of *Melkonyan* would not further, and indeed would retard, the operation of the EAJA. By making attorney's fees available to parties who pursued valid claims against the government, Congress sought to overcome the harsh reality that, without the availability of attorney's fees, in many instances aggrieved parties would find it "more practical to endure an injustice than to contest it." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 9, *reprinted in* 1980 U.S.C.C.A.N. 4953, 4988; *see also Miller*, 1991 WL 165067 at *3, 1991 U.S.Dist. LEXIS 11919 at *9. A retroactive application of the *Melkonyan* rule would place plaintiffs whose claims had been remanded prior to *Melkonyan*, but who had not yet applied for attorney's fees, in precisely the situation that Congress sought to prevent.[4]

Third, retroactive application of the *Melkonyan* rule would create a substantial inequitable result. It would, in effect, punish plaintiff for failing to recognize a time limit whose existence had not yet been articulated within the Third Circuit, and indeed whose existence the Third Circuit had affirmatively denied. *See Miller*, 1991 WL 165067 at *3, 1991 U.S.Dist. LEXIS at *9. The fact that plaintiff did not file a fee application after the January remand order cannot be attributed to a lack of diligence on his part; rather, the non-filing was in accord with the controlling law of this Circuit. Plaintiff's awareness of and desire to protect his rights under the EAJA is demonstrated by the filing of the present motion on July 10, within thirty days of the June 10 issuance of the *Melkonyan* decision. Under the circumstances, it would be inequitable to deprive plaintiff of the opportunity to file an application for attorney's fees.

In applying the *Chevron* test to *Melkonyan*, I recognize that a divided Supreme Court recently restricted the applicability of *Chevron*. In *James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), Justice Souter, announcing the judgment of the Court, criticized a form of prospective application of a new rule that he termed "selective prospectivity," by which a court would announce a new rule of law, apply the new rule to the parties before it, but continue to apply the previous rule to parties whose claims had arisen before the date on which the new rule was announced. *See id.* at 2444, 2447–48.[5] Justice Souter concluded that, regardless of the continued vitality of *Chevron* in instances of purely prospective application of a new rule, "when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *Id.* at 2448. If the *Melkonyan* Court applied the rule that it announced concerning sentence four remands to the litigants before it, my application of the *Chevron* test would be contrary to *Beam*.

The *Melkonyan* Court, however, did not apply its newly announced rule regarding sentence four remands to the litigants before it, because the facts of *Melkonyan* did not involve a sentence four remand. *See Melkonyan*, 111 S.Ct. at 2163; *see also Butts v. Bowen*, 775 F.Supp. 1167, 1171 (N.D.Ill.1991) (concluding that *Beam* did not require retroactive application of *Melkonyan* because the *Melkonyan* Court did not apply its rule regarding sentence four remands). In *Melkonyan*, on the motion of the Secretary to remand the case for further consideration by the Secretary, the district court had remanded without addressing the merits of the plaintiff's claim or of the Secretary's initial decision. Such a remand order could not be "a judgment affirming, modifying, or reversing the deci-

---

4. Admittedly, these claimants would have already decided to pursue their benefits. But without the availability of attorneys' fees, which had been held out to them as a possibility at the commencement of their litigation, the claimants could well find themselves burdened with coun-

sel fees that approach the amount of benefits gained.

5. The Supreme Court had already prohibited selective prospectivity in the criminal context in *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987).

sion of the Secretary" within the meaning of sentence four. *See Melkonyan*, 111 S.Ct. at 2163. Indeed, it is difficult to believe that, had *Melkonyan* involved a situation parallel to that of the present case, the Supreme Court would have ordered retroactive application of its newly announced rule, because such a decision would have left without a remedy a large number of Social Security claimants who had relied on existing law.[6] Be that as it may, because the *Melkonyan* Court did not apply the rule that it announced with respect to sentence four remands, *Beam* does not preclude application of the *Chevron* test.[7]

Plaintiff will therefore be given an opportunity to show that he is entitled to fees pursuant to the EAJA. Plaintiff shall have fifteen days in which to file a supplementary application making the requisite showing. In giving plaintiff the opportunity to present a full application for an award of attorney's fees, of course, I express no opinion on the merits of plaintiff's claim for fees.

**6.** In contrast, to the extent that the Court did apply its holding concerning sentence six remands to the parties before it, that holding created no difficulties of timeliness concerning the petitioner's fee application. The issue of retroactivity thus did not arise in *Melkonyan. See Butts*, 775 F.Supp. at 1171 n. 7.

**7.** Several courts have reached a result contrary to that reached here. Some have determined that *Melkonyan* required retroactive application without reference to *Beam. See Welter v. Sullivan*, 941 F.2d 674, 675 (8th Cir.1991) (concluding without comment that *Melkonyan* required retroactive application). Some have determined that *Beam* precluded use of *Chevron* analysis and required retroactive application of *Melkonyan. See Hudson v. Sullivan*, 779 F.Supp. 37 (W.D.Pa.1991); *Audette v. Sullivan*, 776 F.Supp. 84 (D.R.I.1991); *Fergason v. Sullivan*, 771 F.Supp. 1008, 1012 (W.D.Mo.1991). To the extent that the analysis of these courts differs from mine, I must respectfully disagree with them.